## Bank of Commerce and Savings, Appellant, v. Pope County State Bank, Appellee.

BANKS AND BANKING—*sufficiency of evidence to show cashier acted for bank in securing certificates of deposit.* Where the cashier of appellant bank prior to its commencing business secured, as a matter of accommodation from appellee bank, two certificates of deposit in return for certain notes secured by stock in appellant bank, which notes appellant could not legally carry because they were secured by its own stock, with the understanding that appellee could at any time return the notes and collateral and receive the certificates of deposit, which was thereafter done through appellant's cashier, in an action by appellant to recover the amount of the certificates and interest, evidence examined and *held* to show that appellant's cashier was acting for it in the transaction so that whether it accepted the contract as made or repudiated it as unauthorized it was required to return the certificates and could not recover the amount represented by them.

Appeal from the Circuit Court of Pope county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the March term, 1921. Affirmed. Opinion filed November 10, 1921. Rehearing denied April 5, 1922.

BROWN, BROWN & BROWN and JOHN W. BROWNING, for appellant.

CHARLES DURFEE and RUFUS NEELY, for appellee.

MR. JUSTICE BARRY delivered the opinion of the court.

The auditor of public accounts, on August 11, 1916, issued his certificate authorizing appellant to do business. It was not filed for record until September 7, 1916, at which time, and not before, it became fully

organized and entitled to proceed to business as provided by section 5 of the Banks Act (Cahill's Ill. St. ch. 16a, ¶ 5). It did not actually open for the transaction of business until October 2, 1916.

Prior to the organization of appellant, W. F. Van Buskirk and William M. Grissom had entered into a contract whereby the latter undertook to secure subscriptions for at least 1,000 shares of the capital stock at $120 per share, and in consideration thereof Mr. Van Buskirk agreed to secure the election of two directors nominated by Mr. Grissom and he was to do all in his power to elect Mr. Grissom as cashier of the bank.

Mr. Grissom secured subscribers for the amount of stock undertaken by him, and Mr. Van Buskirk secured subscriptions for 4,000 shares and upon the organization the latter was made president and Mr. Grissom cashier of appellant and they held those positions during the time covered by the transactions in question.

During the same period Edward B. Clark was president of appellee, had been acquainted with Mr. Grissom in Southern Illinois for many years and knew that he had been elected vice president and cashier of appellant.

On September 25, 1916, Mr. Grissom called on Mr. Clark at Golconda, Illinois, and told him, in substance, that he would like to get an accommodation from appellee for appellant. He said that his bank had two notes, one on O. R. Lee for $6,000, secured by 60 shares of the capital stock of appellant, and the other on Noel Whitehead for $5,000, secured by 50 shares of the same stock. That under the law or the banking rules his bank could not carry those notes because of the fact that they were secured by stock of the bank and that he would like to get appellee to issue certificates of deposit for the amount of the notes which appellant could substitute for the notes—appellee to hold the notes and collateral temporarily until such

24 APPELLATE COURTS OF ILLINOIS.

Bank of Com. & Sav. v. Pope County State Bk., 223 Ill. App. 22.

time as appellee might ask for a return of the certificates, and which would then be returned to appellee upon demand and a surrender of the notes.

Appellee decided to accommodate appellant and on that understanding issued and delivered two certificates of deposit for $5,000 and $6,000, respectively, and took the Lee and Whitehead notes and the collateral therewith. Mr. Grissom took the certificates and turned them in to appellant on October 2, 1916, the day it opened its bank for business, and they were entered upon its books.

A few months later and before the notes came due, appellee returned them with the collateral to appellant and demanded a return of the certificates of deposit. After some delay, on April 11, 1917, appellant, by its vice president and cashier, wrote appellee a letter and therein inclosed the certificates and a check for the amount of the interest on the notes, $435.50. On the following day, appellee sent appellant a draft payable to its order for $220, the interest on the certificates of deposit, which draft was received and cashed by appellant. The entire transaction was closed on April 12, 1917, just as it was originally agreed at the time the certificates were issued.

From the time appellant began business on October 2, 1916, the certificates of deposit were in its files until about March 25, 1917, when they were taken out by Mr. Grissom with the knowledge and consent of the president of the bank and the discount teller. The clearing house examiner discovered that the certificates were not in the files and asked the president if he knew that Mr. Grissom had taken and cashed them. The president in the latter part of June, 1917, called Mr. Grissom in and asked him if he knew anything about them and whether he had received the cash on them, and Mr. Grissom said he had not but that he had received the notes and he then gave the president the notes without the collateral.

The evidence fails to show that appellant made any complaint about the return of the certificates until a few days before this suit was begun, which was June 12, 1918, when appellant tendered to appellee the Lee and Whitehead notes, but not the collateral, and demanded a return of the certificates.

Appellee declined and appellant began this suit to recover the amount of the certificates and interest. The trial resulted in a verdict and judgment for appellee, and appellant has appealed to this court.

All of the alleged errors relied upon for a reversal of the judgment are dependent upon appellant's main contention that the notes in question were never the property of appellant, that Mr. Grissom was personally interested therein and for that reason appellant was not chargeable with his knowledge of the circumstances under which the certificates were procured, and that the evidence pertaining thereto was improperly admitted and the instructions based thereon were erroneous.

We find no evidence in the record to warrant the conclusion that Mr. Grissom was personally interested in the Lee and Whitehead notes. His conversation with Mr. Clark, which is not controverted, negatives the idea that it was his personal transaction and shows conclusively that he was acting for appellant. The fact that appellant's discount register shows nothing with reference to the Lee and Whitehead notes does not establish that they were not the property of appellant or that it was not interested in them. *First State Bank of Coulterville v. Bank of Commerce & Savings,* 219 Ill. App. 645 (abst.).

While we do not deem it material whether appellant owned the notes or was interested therein at the time the certificates were issued, there is evidence from which the fact that such was the case might be inferred. The notes are dated August 1 and August 16, 1916, one before, the other after, the date of the audi-

tor's certificate of authority and both prior to the date of final organization of appellant. Both were payable at the place of business fixed upon for appellant and both were secured by stock of appellant which had been issued before the certificate of authority to do business had been filed and prior to complete organization of appellant. It is apparent that the notes must have been executed in part payment for the stock which was placed as collateral for the notes.

The certificates were procured from appellee on September 25, 1916, and were turned in to appellant and entered upon its books the day it actually opened for business. It is said that appellant paid $11,000 for the certificates, but there is no showing as to whom it was paid or the circumstances pertaining thereto.

It is our opinion that when Mr. Grissom procured the certificates of deposit from appellee under the agreement hereinabove set out, he was acting for and in behalf of appellant and that what he said on that occasion was competent evidence. The evidence shows that pursuant to the terms of that agreement appellee surrendered the notes and demanded a return of the certificates. The demand was complied with, the matter of interest adjusted and the transaction fully closed on April 12, 1917. Appellant's president admits that in the latter part of June, 1917, he learned from Mr. Grissom that he had returned the certificates and had received the Lee and Whitehead notes which were then turned over to him. No complaint was made to appellee for about a year thereafter.

The certificates were issued by appellee and delivered to appellant through its vice president and cashier purely as a matter of accommodation, and if appellant had sold them to a third person appellee would have been entitled to recover from appellant. *Ruvenacht v. German-American Bank of Gridley*, 212 Ill. App. 68, aff'd 287 Ill. 266.

The agreement made by Mr. Grissom with appellee

was not for the issuance, alone, of the certificates but for their issuance and return upon demand and a surrender of the notes and collateral. So that whether appellant accepted the contract as made or repudiated it as unauthorized, it would be required to return the certificates. *Murray. v. Standard Pecan Co.*, 217 Ill. App. 587.

It is our opinion that, in any view of the case, appellant was not entitled to recover and it is unnecessary to consider the various errors' assigned. The judgment is affirmed.

*Affirmed.*